1
2
3

# UNITED STATES DISTRICT COURT

4

## EASTERN DISTRICT OF CALIFORNIA

5
6
7
8
9
10
11
12

| | |
|---|---|
| CHLOE PSALM JERI BORDEN,<br><br>   **Plaintiff,**<br><br>  v.<br><br>**DEPUTY ETHAN BARE; DEPUTY JEREMY MALICOAT,**<br><br>   **Defendants** | **CASE NO. 1:20-cv-01103-AWI-EPG**<br><br>**ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>(Doc. No. 23) |

13
14
15
16
17
18

   This case stems from an arrest of Plaintiff Chloe Psalm Jeri Borden by Defendants Fresno County Sheriff's Deputies Ethan Bare and Jeremy Malicoat.  Plaintiff filed suit pursuant to 42 U.S.C. § 1983 alleging violations of her rights protected by the First and Fourth Amendments to the United States Constitution.  Doc. No. 1.  Pending before the Court is Defendants' Motion for Summary Judgment.  Doc. No. 23.  For the reasons discussed below, the Court will grant Defendants' Motion.

19

## SUMMARY JUDGMENT FRAMEWORK

20
21
22
23
24
25
26
27
28

   Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); see Southern Cal. Darts Ass'n v. Zaffina, 762 F.3d 921, 925 (9th Cir. 2014).  The moving party bears the burden of establishing the absence of a genuine issue of material fact, generally by "citing to particular parts of materials in the record" such as depositions, interrogatory answers, declarations, and documents.  Fed. R. Civ. P. 56(c); see also Cline v. Indus. Maint. Eng'g & Contracting Co., 200 F.3d 1223, 1229 (9th Cir. 2000) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323-24

1  (1986)).  A fact is "material" if it might affect the outcome of the suit under the governing law.

2  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986); Thrifty Oil Co. v. Bank of

3  Am. Nat'l Trust & Sav. Ass'n, 322 F.3d 1039, 1046 (9th Cir. 2002).  A dispute is "genuine" as to

4  a material fact if there is sufficient evidence for a reasonable jury to return a verdict for the non-

5  moving party.  See Anderson, 477 U.S. at 248; Long v. County of Los Angeles, 442 F.3d 1178,

6  1185 (9th Cir. 2006).  If the moving party does not meet this burden, "[s]ummary judgment may

7  be resisted and must be denied on no other grounds than that the movant has failed to meet its

8  burden of demonstrating the absence of triable issues."  Henry v. Gill Indus., 983 F.2d 943, 950

9  (9th Cir. 1993).

10  If the moving party meets this burden, the burden shifts to the opposing party to show a

11  genuine issue of material fact.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S.

12  574, 586-87 (1986); Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, 210 F.3d 1099, 1103

13  (9th Cir. 2000).  "[A] party opposing a properly supported motion for summary judgment may not

14  rest upon the mere allegations or denials of his pleadings, but … must set forth specific facts

15  showing that there is a genuine issue for trial."  Anderson, 477 U.S. at 248; Estate of Tucker v.

16  Interscope Records, 515 F.3d 1019, 1030 (9th Cir. 2008).  The evidence of the opposing party is to

17  be believed, and all reasonable inferences that may be drawn from the facts placed before the court

18  must be drawn in favor of the opposing party.  See Anderson, 477 U.S. at 255; Stegall v. Citadel

19  Broad, Inc., 350 F.3d 1061, 1065 (9th Cir. 2003).  Summary judgment may not be granted "where

20  divergent ultimate inferences may reasonably be drawn from the undisputed facts."  Fresno

21  Motors, LLC v. Mercedes Benz USA, LLC, 771 F.3d 1119, 1125 (9th Cir. 2015).  Nevertheless,

22  inferences are not drawn out of the air, and it is the opposing party's obligation to produce a

23  factual predicate from which the inference may be drawn.  See Juell v. Forest Pharms., Inc., 456 F.

24  Supp. 2d 1141, 1149 (E.D. Cal. 2006); UMG Recordings, Inc. v. Sinnott, 300 F. Supp. 2d 993,

25  997 (E.D. Cal. 2004).  If the nonmoving party does not produce enough evidence to create a

26  genuine issue of material fact after the burden has shifted, the moving party is entitled to summary

27  judgment. Fed. R. Civ. P. 56(c); Nissan Fire & Marine Ins., 210 F.3d at 1103; Celotex, 477 U.S.

28  at 322.

1   **FACTUAL BACKGROUND[1]**

2        Fresno County Superior Court General Order, effective on June 7, 2018 ("General Order"),

3   and Local Rule 1.1.17 regulate the use of cameras and recording devices in and around Fresno

4   County Superior Courthouses.  DUMF 5; PUMF 5.  With a few exceptions, these regulations

5   generally prohibit photographing, recording, and broadcasting the inside of Fresno County

6   Superior Courthouses.  DUMF 5, 8; PUMF 5.

7        On May 10, 2019, Plaintiff was in the breezeway near the north entrance to the Fresno

8   County Superior Courthouse.  DUMF 1.  Standing in or around the courthouse's "designated

9   media area," Plaintiff began using her cell phone to video record the security screening and lobby

10  area inside the courthouse as individuals entered and went through screening.  DUMF 1-2; PUMF

11  1.  Plaintiff was neither a member nor representative of the media.  Doc. No. 37 at 2.  Defendant

12  Bare noticed Plaintiff from within the courthouse, opened the entrance door, and asked Plaintiff if

13  she was taking pictures.  DUMF 3-4.  Defendant Bare thereafter returned into the courthouse.

14  PUMF 4.

15       After noticing Plaintiff still in the breezeway appearing to video record the inside of the

16  courthouse, Defendant Bare contacted Plaintiff a second time to investigate whether she was

17  photographing or video recording the courthouse's entrance and interior in violation of the

18  General Order and Local Rule 1.1.17.  DUMF 6.  Defendant Bare was unable to determine how

19  Plaintiff was using her cell phone and again returned into the courthouse.  DUMF 7.

20       Shortly thereafter, Defendants Bare and Malicoat went out to the breezeway, asked

21  Plaintiff what she was doing, and informed her of the General Order and Local Rule 1.1.17.

22  DUMF 8; PUMF 8.  Plaintiff responded by asking Defendants for their names and badge numbers,

23  which Defendants then provided.  DUMF 9.  Plaintiff also asked if she could record them, and

24  Defendants did not refuse.  PUMF 9, 10.  As Defendant Bare attempted to explain the applicable

25  _____

26  [1] "DUMF" refers to Defendants' undisputed material fact.  "PUMF" refers to Plaintiff's undisputed material fact.  The Court notes that while Plaintiff filed a document labeled "Plaintiff's Separate Statement of Undisputed Material Facts"

27  (Doc. No. 32), the document appears to be a response to Defendants' Separate Statement of Undisputed Material Facts (Doc. No. 23-2) that does not expressly admit those facts that are undisputed nor deny those that are disputed.  To the extent Plaintiff intended this document to serve as both a Statement of Disputed Facts and response to Defendants'

28  Separate Statement of Undisputed Material Facts, the Court will accept each of Defendants' alleged facts that is not expressly denied by Plaintiff.

1    rules, Plaintiff repeatedly talked over and interrupted him.  DUMF 10.  Defendant Bare eventually

2    asked Plaintiff for her identification, to which she refused and asked what crimes she was

3    committing.  DUMF 11; PUMF 11.  Plaintiff requested to see the applicable rules, and Defendants

4    attempted to explain them orally without showing them to her in writing.  PUMF 12; DUMF 11.

5         Defendants allege Plaintiff's repeated interruptions and refusal to identify herself delayed

6    and obstructed Defendant Bare's investigation into whether she was photographing or video

7    recording the courthouse in violation of the General Order and Local Rule 1.1.17.  DUMF 12.

8    Defendant Bare reached for Plaintiff's arm to handcuff her, and she responded by pulling away

9    from his grasp. DUMFs 13-14; PUMF 13.  Defendant Bare's incident report does not state that he

10   gave Plaintiff a warning before grabbing her arm to handcuff her.  DUMF 18.  Both Defendants

11   thereafter overcame her resistance by grabbing Plaintiff's arms and pushing her against a wall to

12   handcuff her.  DUMF 14; PUMF 14.  Defendants arrested Plaintiff on grounds that she violated

13   California Penal Code section 148(a)(1) by willfully delaying and obstructing a peace officer

14   engaged in the performance of his duties.  DUMF 15.

15        On August 8, 2020, Plaintiff filed her Complaint against Defendants, asserting three causes

16   of action: (1) retaliatory detention and arrest in violation of the First and Fourth Amendments, (2)

17   malicious and retaliatory prosecution in violation of the First and Fourth Amendments, and (3)

18   excessive and retaliatory force in violation of the First and Fourth Amendments.  Doc. No. 1.  On

19   May 2, 2022, Defendants filed a Motion for Summary Judgment with respect to all of Plaintiff's

20   claims.  Doc. No. 23.

21                                  **DISCUSSION**

22        Defendants seeks summary judgment on all of Plaintiff's claims, including Plaintiff's (1)

23   retaliatory detention and arrest claim in violation of the First and Fourth Amendments, (2)

24   malicious and retaliatory prosecution claim in violation of the First and Fourth Amendments, and

25   (3) excessive and retaliatory force claim in violation of the First and Fourth Amendments.  The

26   Court will review each claim below in turn.

27   //

28   //

**1.**  **Retaliatory Detention and Arrest**

  **A.**  **Fourth Amendment**

 *Defendants' Arguments*

  Defendants argue that Plaintiff's Fourth Amendment claim for unconstitutional and retaliatory arrest is baseless because Defendants had probable cause to arrest her.  Based on the facts known to Defendants at the time of the arrest, Defendants attempted to investigate whether Plaintiff was violating the General Order and Local Rule 1.1.17.  However, Plaintiff delayed and obstructed Defendants' investigation in violation of California Penal Code § 148(a)(1).  Because the totality of the circumstances indicated that there was a fair probability that Plaintiff violated California Penal Code § 148(a)(1), Defendants argue they had probable cause to arrest Plaintiff.

  Furthermore, Defendants argue they are protected by qualified immunity because there was no clearly established law informing Defendants that their arrest of Plaintiff violated her constitutional rights.  According to Defendants, it was reasonably arguable under Ninth Circuit case law that they had probable cause to arrest Plaintiff—that is, reasonable officers could disagree as to the legality of arresting Plaintiff.

 *Plaintiff's Arguments*

  Plaintiff argues that Defendants lacked probable cause to arrest her and cites the findings of expert Darrell York to support this argument.  According to York, Defendants had no legal basis to require Plaintiff to stop and provide identification because she had not violated the General Order or Local Rule 1.1.17.  Therefore, Defendants' alleged probable cause to arrest her for delaying and obstructing their investigation is baseless because there was no violation to investigate in the first place.  Plaintiff further contends that Defendants are not immune from her Fourth Amendment claim for retaliatory arrest because it was clearly established that they lacked probable cause to arrest her.

 *Legal Standard*

  a)  Probable Cause

  The Fourth Amendment protects persons against "unreasonable searches and seizures." U.S. Const. amend. IV.  The "reasonableness" of a warrantless arrest is determined by the

existence of probable cause.  Allen v. City of Portland, 73 F.3d 232, 235 (9th Cir. 1995) (citing Barry v. Fowler, 902 F.2d 770, 772 (9th Cir. 1990)).  The absence of probable cause is a necessary element of a § 1983 false arrest claim.  Yousefian v. City of Glendale, 779 F.3d 1010, 1014 (9th Cir. 2015) (citing Barry, 902 F.2d at 772-73).  An officer has probable cause to make a warrantless arrest when the facts and circumstances within his knowledge are sufficient for a reasonably prudent person to believe that the suspect has committed a crime.  Reed v. Lieurance, 863 F.3d 1196, 1204 (9th Cir. 2017) (citing Rosenbaum v. Washoe Cty., 663 F.3d 1071, 1076 (9th Cir. 2011)).  "The analysis involves both facts and law.  The facts are those that were known to the officer at the time of the arrest.  The law is the criminal statute to which those facts apply." Rosenbaum, 663 F.3d at 1076.  Probable cause does not require "certainty," a "preponderance of the evidence," or even a "prima facie" showing; it simply requires a "fair probability."  See United States v. Gourde, 440 F.3d 1065, 1073 (9th Cir. 2006); McFarland v. City of Clovis, 2017 U.S. Dist. LEXIS 54616, *17 (E.D. Cal. Apr. 10, 2017).  The officer may not ignore exculpatory evidence that would "negate a finding of probable cause."  Yousefian, 779 F.3d at 1014 (citing Broam v. Bogan, 320 F.3d 1023, 1032 (9th Cir. 2003)).  The existence of probable cause is a question of law for the court when the facts are not in dispute.  Conner v. Heiman, 672 F.3d 1126, 1130 n.1 (9th Cir. 2012) (citing Peng v. Mei Chin Penghu, 335 F.3d 970, 979-80 (9th Cir. 2003)).

### b)  Qualified Immunity

The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Mattos v. Agarano, 661 F.3d 433, 440 (9th Cir. 2011) (citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  Qualified immunity shields an officer from liability even if his or her action resulted from "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact."  Mattos v. Agarano, 661 F.3d 433, 440 (9th Cir. 2011).  Officers are entitled to qualified immunity under § 1983 unless (1) the officers violate a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was "clearly established at the time."  District of Columbia v. Wesby, 138 S. Ct. 577, 589 (2018).  The court may address these steps in any order.  Felarca v. Birgeneau, 891 F.3d 809, 815-16 (9th

1  Cir. 2018).

2          "Clearly established" means that the statutory or constitutional question was "beyond

3  debate," such that every reasonable official would understand that what he is doing is unlawful.

4  See Wesby, 138 S. Ct. at 589; Vos v. City of Newport Beach, 892 F.3d 1024, 1035 (9th Cir.

5  2018).  This is a "demanding standard" that protects "all but the plainly incompetent or those who

6  knowingly violate the law."  Wesby, 138 S. Ct. at 589 (citing Malley v. Briggs, 475 U.S. 335, 341

7  (1986)).  To be "clearly established," a rule must be dictated by controlling authority or by a

8  robust consensus of cases of persuasive authority.  Id.; see also Perez v. City of Roseville, 882

9  F.3d 843, 856-57 (9th Cir. 2018) (noting that Ninth Circuit precedent is sufficient to meet the

10  "clearly established" prong of qualified immunity).

11          In the probable cause context, if an officer makes an arrest without probable cause, he or

12  she may be entitled to qualified immunity as long as it is reasonably arguable that there was

13  probable cause for the arrest.  Rosenbaum, 663 F.3d at 1078 (citing Ramirez v. City of Buena

14  Park, 560 F.3d 1012, 1024 (9th Cir. 2009)).  "[T]he question in determining whether qualified

15  immunity applies is whether all reasonable officers would agree that there was no probable cause

16  in this instance."  Id. (citing Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011)).  The law must be

17  "clearly established" such that it would "be clear to a reasonable officer that his conduct was

18  unlawful in the situation he confronted."  Id. at 1078-79.  Qualified immunity applies even if the

19  officer's action resulted from "a mistake of law, a mistake of fact, or a mistake based on mixed

20  questions of law and fact."  Mattos, 661 F.3d at 440.  Whether a constitutional right was violated

21  is generally a question of fact for the jury, while whether a right was clearly established is a

22  question of law for the judge.  Morales v. Fry, 873 F.3d 817, 823 (9th Cir. 2017).  The plaintiff

23  bears the burden to prove that the law was "clearly established."  Felarca, 891 F.3d at 815.

24          *Discussion*

25          The relevant criminal statute in this matter is California Penal Code § 148(a)(1).  The legal

26  elements of a § 148(a)(1) violation are "(1) the defendant willfully resisted, delayed, or obstructed

27  a peace officer, (2) when the officer was engaged in the performance of his or her duties, and (3)

28  the defendant knew or reasonably should have known that the other person was a peace officer

7

engaged in the performance of his or her duties." <u>Yount v. City of Sacramento</u>, 43 Cal. 4th 885, 894-95 (2008); <u>Velazquez v. City of Long Beach</u>, 793 F.3d 1010, 1018 (9th Cir. 2015).  A conviction under this statute requires that the obstructive acts occur while the officer engages in "the lawful exercise of his duties." <u>Sanders v. City of Pittsburg</u>, 14 F.4th 968, 971 (9th Cir. 2021). The conviction "can be valid even if, during a single continuous chain of events, some of the officer's conduct was unlawful." <u>Hooper v. Cty. of San Diego</u>, 629 F.3d 1127, 1131 (9th Cir. 2011) (citing <u>Yount</u>, 43 Cal. 4th at 885 (2008)).  The conviction "requires only that some lawful police conduct was resisted, delayed, or obstructed during that continuous chain of events." <u>Id.</u>

Here, Defendants argue that Plaintiff delayed and obstructed their investigation into whether Plaintiff violated the General Order and Local Rule 1.1.17.  In relevant part, the General Order states "[w]hile in court, no one may engage in photographing, recording, or broadcasting, or activate any camera, microphone, recorder or broadcasting device, except: . . . outside the courtroom, if it is: i) in a designated media area . . . ."  Local Rule 1.1.17(B)(4) similarly states "[n]o one may engage in photographing, recording, broadcasting, or activating any camera, microphone, recorder or broadcasting device while in Court, or in any courthouse, except: . . . Outside the Court, if it is: i) in a designated media area . . . ."  Both rules define "Court" to include courthouse "entrances" and "exits."  They also indicate that the "designated media area" at the Fresno County Superior Courthouse is located in the "Breezeway between buildings," but they do not define the meaning of the phrase "designated media area."  While Plaintiff claims that the privileges afforded in the designated media area apply to all members of the general public, Doc. No. 37 at 2, Defendants claim that they apply only to members of the media.  Doc. No. 36 at 2. Thus, to determine whether Defendants had probable cause to arrest Plaintiff under California Penal Code section 148(a)(1), the Court must first determine whether Defendants were justified in investigating Plaintiff's act of video recording the inside the courthouse while she stood in the designated media area.

As an initial matter, the Court notes that neither party provided, and the Court's own research did not find, a definition of the phrase "designated media area" as applied in the General Order or Local Rules.  The Court is also unaware of any other court that has analyzed or

1  interpreted this phrase.  Therefore, in the absence of an existing definition, the Court will analyze

2  and interpret the phrase's meaning as an issue of first impression based on the text, intent, and

3  purpose of the rules.  Hernandez v. Williams, 829 F.3d 1068, 1073 (9th Cir. 2016) ("Interpretation

4  of a word or phrase depends upon reading the whole statutory text, considering the purpose and

5  context of the statute, and consulting any precedents or authorities that inform the analysis.")

6  (citing Dolan v. U.S. Postal Serv., 546 U.S. 481, 486 (2006)); Larkin v. Workers' Comp. Appeals

7  Bd., 62 Cal. 4th 152, 157 (2015) ("In interpreting a statute, we begin with its text, as statutory

8  language typically is the best and most reliable indicator of the Legislature's intended purpose.");

9  see also L.A. Lakers, Inc. v. Fed. Ins. Co., 869 F.3d 795, 802 (9th Cir. 2017) (stating that statutory

10 interpretation begins with the text).

11          With respect to the text, the plain language of the phrase "designated media area" includes

12 the word "media."  Although the General Order and Local Rule 1.1.17 do not directly define this

13 word, it appears in other sections of the rules alongside references to its defined meaning under

14 California Rule of Court 1.150.  See Local Rule 1.1.17(B)(3), (E).  California Rule of Court

15 1.150(b)(2) defines the word "media" as "any person or organization engaging in news gathering

16 or reporting and includes any newspaper, radio or television station or network, news service,

17 magazine, trade paper, in-house publication, professional journal, or other news-reporting or

18 news-gathering agency."  If this definition is read into the phrase "designated media area," then

19 the phrase refers to an "area" that is "designated" for a "person or organization engaging in news

20 gathering or reporting. . . ."  This suggests that the privileges afforded in the designated media area

21 apply only to members or representatives of the media.  Furthermore, the choice of words in

22 formulating the phrase "designated media area" suggests that the rules' enactors intended to

23 distinguish the media from the general public.  If the intent was to open the area to the general

24 public, then the area could have easily been named "designated public area," "designated area for

25 use of recording devices," or another phrase that clearly indicates that the area is open to the

26 general public.  Therefore, the text weighs in favor of Defendants' interpretation.

27          With respect to the rules' purpose, both rules state that they were enacted "for the

28 protection of the public, all parties, and court personnel, and to facilitate the fair and orderly

1  resolution of cases." This language is written in broad, neutral terms, and the rules do not provide

2  further elaboration. The rules also reference California Rule of Court 1.150, which states that the

3  rule "does not create a presumption for or against granting permission to photograph, record, or

4  broadcast court proceedings." Therefore, based on the neutrally written purpose of the rules and

5  their reference to California Rule of Court 1.150, the overall purpose of the rules does not appear

6  to tilt in either party's favor.

7          Given the above, the Court finds that the privileges afforded in the "designated media

8  area" were meant for members or representatives of the media as defined by California Rule of

9  Court 1.150(b)(2). Accordingly, the Court also finds that Defendants had a legitimate basis to

10  investigate whether Plaintiff violated the General Order and Local Rule 1.1.17 and that

11  Defendants had probable cause to arrest Plaintiff when she delayed and obstructed their

12  investigation.[2] It is undisputed that Defendant Bare noticed Plaintiff video recording the

13  courthouse's entrance and security screening area while standing in or around the designated

14  media area, approached and asked Plaintiff on three separate occasions what she was doing, and

15  attempted to explain to her the relevant rules. It is also undisputed that Plaintiff was not a member

16  of the media and that she repeatedly interrupted and spoke over Defendant Bare while he

17  attempted to investigate and explain to her the relevant rules. Based on the facts and

18  circumstances known to Defendants at the time of the encounter, it is fairly probable that a

19  reasonably prudent officer would believe that Plaintiff willfully delayed and obstructed

20  Defendants' investigation in violation of § 148(a)(1).

21          Even if the Court assumes arguendo that Defendants misinterpreted parts of the General

22  ───────────────

23  [2] Plaintiff takes issue with the fact that Defendants did not provide her a written copy of the General Order or Local
    Rule 1.1.17 upon request during their encounter. Local Rule 1.1.17(K) states "[a]ny court staff, security personnel or
    peace officer who becomes aware that a person is using a device in violation of this rule is directed to advise such
24  individual orally of this rule, and take steps to provide the person with a written copy of this rule as soon as practical."
    It is undisputed that the rules did not require Defendants to provide a written copy of the rules immediately upon
25  request, but instead required Defendants to "take steps" to provide a written copy of the rules "as soon as practical." It
    is also undisputed that Defendant Bare attempted to advise Plaintiff orally of the rules during their encounter and that
26  Plaintiff repeatedly talked over and interrupted him. The record indicates that Plaintiff asked to see the rules after
    these interruptions and while Defendants attempted to arrest her for obstructing their investigation. The record does
27  not show that it was practical for Defendants to halt their investigation to obtain a written copy of the rules while
    Plaintiff proceeded to video record the security screening and lobby area inside the courthouse as individuals entered
28  and went through screening. In any event, whether Plaintiff was provided a written copy of the rule immediately did
    not negate Defendants' probable cause that Plaintiff was engaging in improper recording of the courthouse entrance.

Order and Local Rule and did not have probable cause to arrest, Defendants are nevertheless entitled to qualified immunity because "it is reasonably arguable that there was probable cause for the arrest." Rosenbaum, 663 F.3d at 1078; see also Mattos, 661 F.3d at 440 (qualified immunity applies even if the officer's action resulted from "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact"). Plaintiff has not met her burden to prove that "all reasonable officers would agree that there was no probable cause in this instance." Rosenbaum, 663 F.3d at 1078. Notably, Plaintiff does not cite a single case clearly establishing that Defendants' conduct under the circumstances violated the Fourth Amendment's protection against unreasonable searches and seizures. Instead, Plaintiff submits York's expert report which concludes that Defendants lacked probable cause and falsely arrested Plaintiff. Doc. No. 29 at 9-10. While the expert report may be considered relevant evidence, it alone does not defeat qualified immunity because it does not prove that the law at the time of the arrest was clear to a reasonable officer that Defendants' conduct under the circumstances was unlawful. See O'Doan v. Sanford, 991 F.3d 1027, 1043 (9th Cir. 2021) ("We can assume the truth of [plaintiff's] expert report and still conclude that, under the legal standards that govern, the officers did not violate clearly established law in arresting [plaintiff]"); Dean v. Fluty, 231 F. Supp. 3d 513, 521 (C.D. Cal. 2017) (stating that while an expert report may be considered as relevant evidence of reasonableness in a qualified immunity analysis, the Court conducts its own analysis of whether probable cause and qualified immunity exist based on an objective analysis of the law and facts). More to the point, the existence of probable cause is a legal question for the Court. Conner, 672 F.3d at 1130 n.1 (citing Peng, 335 F.3d at 979-80). Accordingly, because it is reasonably arguable based on the facts and circumstances that there was probable cause for the arrest and because Plaintiff failed to prove that there was clearly established law indicating otherwise, Defendants are entitled to qualified immunity.

## B. **First Amendment**

*Defendants' Arguments*

Defendants argue that Plaintiff's First Amendment claim for unconstitutional and retaliatory arrest fails because Defendants had probable cause to arrest her as discussed above.

1   Alternatively, Defendants argue that Plaintiff's speech occurred in a nonpublic forum where her

2   speech could be restricted by regulations that are viewpoint neutral and reasonable in light of the

3   purposes served by the forum.  According to Defendants, the General Order and Local Rule 1.1.17

4   were reasonable restrictions to protect the public, litigants, and court personnel, and to facilitate

5   the fair and orderly resolution of cases.  The restrictions were also viewpoint neutral because they

6   did not regulate speech based on content but rather on the simple fact that she was recording the

7   inside of the courthouse.  Furthermore, Defendants argue they are protected by qualified immunity

8   because reasonable officers could disagree as to the legality of arresting Plaintiff for video

9   recording the inside of the courthouse.

10          _Plaintiff's Arguments_

11          Plaintiff argues that Defendants violated her First Amendment right to free speech because

12   retaliation was a substantial and motivating factor in their decision to arrest her.  Additionally,

13   Plaintiff asserts that Defendants failed to show that the arrest would have occurred regardless of

14   Plaintiff's "anti-police speech."  Doc. No. 29 at 14.  Furthermore, while Plaintiff agrees that a

15   finding of probable cause would generally defeat her First Amendment claim, she contends that

16   there is an exception for cases where officers exercise discretion in making the arrest and that this

17   exception applies to her case.  According to Plaintiff, Defendants treated similarly situated

18   individuals differently than they treated Plaintiff. Therefore, the reason why Defendants arrested

19   her was that they wished to retaliate against her for interrupting and talking back and not providing

20   her identification.  Furthermore, Plaintiff contends that Defendants are not immune from her First

21   Amendment claim for retaliatory arrest because the Ninth Circuit clearly established a "First

22   Amendment right to be free from police action motivated by retaliatory animus, even if probable

23   cause existed for that action."  Doc. No. 29 at 16.

24          _Legal Standard_

25          The First Amendment forbids government officials from retaliating against individuals for

26   speaking out. Blair v. Bethel Sch. Dist., 608 F.3d 540, 543 (9th Cir. 2010).  To state a claim for

27   First Amendment retaliation against a government official, the plaintiff must demonstrate that "(1)

28   he engaged in constitutionally protected activity; (2) as a result, he was subjected to adverse action

12

1    by the defendant that would chill a person of ordinary firmness from continuing to engage in the

2    protected activity; and (3) there was a substantial causal relationship between the constitutionally

3    protected activity and the adverse action." Mulligan v. Nichols, 835 F.3d 983, 988 (9th Cir.

4    2016).

5         Plaintiffs bringing First Amendment retaliatory arrest claims "must generally 'plead and

6    prove the absence of probable cause,' because the presence of probable cause generally 'speaks to

7    the objective reasonableness of an arrest' and suggests that the 'officer's animus' is not what

8    caused the arrest." Ballentine v. Tucker, 28 F.4th 54, 62 (9th Cir. 2022) (citing Nieves v. Bartlett,

9    139 S. Ct. 1715, 1723-24 (2019)).  If the plaintiff establishes the absence of probable cause, the

10   plaintiff must show that the retaliation was a substantial or motivating factor behind the arrest,

11   and, if that showing is made, the defendant can prevail only by showing that the arrest would have

12   been initiated without respect to retaliation.  Id. at 63 (citing Nieves, 139 S. Ct. at 1725).

13        Although a finding of probable cause generally defeats a retaliatory arrest claim, a "narrow

14   exception" applies where "officers have probable cause to make arrests, but typically exercise

15   their discretion not to do so." Nieves, 139 S. Ct. at 1727.  For example, "[i]f an individual who

16   has been vocally complaining about police conduct is arrested for jaywalking"—an offense that

17   "rarely results in arrest"—"it would seem insufficiently protective of First Amendment rights to

18   dismiss the individual's retaliatory arrest claim on the ground that there was undoubted probable

19   cause for the arrest." Id.  This *Nieves* exception "applies only 'when a plaintiff presents objective

20   evidence that he was arrested when otherwise similarly situated individuals not engaged in the

21   same sort of protected speech had not been.'" Ballentine, 28 F.4th at 62 (citing Nieves, 139 S. Ct.

22   at 1727).  Showing "differential treatment addresses [the] causal concern by helping to establish

23   that non-retaliatory grounds [we]re in fact insufficient to provoke the adverse consequences." Id.

24        Furthermore, because courthouse grounds are a nonpublic forum, Sammartano v. First

25   Judicial Dist. Ct., 303 F.3d 959, 966 (9th Cir. 2002) (holding that judicial and municipal

26   complexes are nonpublic forums); Mante v. Slough, 2015 U.S. Dist. LEXIS 200775, *33 (C.D.

27   Cal. Mar. 27, 2015) (holding that the curtilage around the courthouse is a nonpublic forum), the

28   county may regulate and restrict speech inside it as long as the regulations (1) are "reasonable in

light of the purpose served by the forum" and (2) are "viewpoint neutral." Cornelius v. NAACP Legal Defense & Educ. Fund, 473 U.S. 788, 806 (1985); Sammartano, 303 F.3d at 966.  With respect to the first prong, "the [g]overnment's decision to restrict access to a nonpublic forum need only be *reasonable*; it need not be the most reasonable or the only reasonable limitation."  Berry v. Dep't of Soc. Servs., 447 F.3d 642, 653 (9th Cir. 2006) (emphasis in original) (citing Cornelius, 473 U.S. at 808).

   *Discussion*

   As explained above, Defendants had probable cause to investigate and arrest Plaintiff, which is generally sufficient to defeat her First Amendment retaliatory arrest claim.  Ballentine, 28 F.4th at 62 (citing Nieves, 139 S. Ct. at 1723-24).  Therefore, the key issue before the Court is whether the *Nieves* exception applies, that is, whether Plaintiff has presented sufficient "objective evidence that [s]he was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been."  Nieves, 139 S. Ct. at 1727.  Although the total number of Ninth Circuit cases applying the *Nieves* exception at the time of this order is sparse, the Ninth Circuit has provided some guidance on what and how much evidence of differential treatment is needed for the *Nieves* exception to apply.

   In *Ballentine*, the Ninth Circuit ruled that the plaintiffs presented sufficient "objective evidence" that they were arrested for their speech while others who similarly spoke out were not. Ballentine, 28 F.4th at 62.  The evidence consisted of (1) evidence that other individuals speaking out at the same time and place as plaintiffs were not arrested, (2) records showing that engaging in the type of speech that plaintiffs engaged in "rarely result[ed] in arrest," (3) records of only two instances in which such persons were suspected of or charged with a crime, and (4) evidence that the plaintiffs had engaged in such speech on at least nine prior occasions without getting arrested, cited, or told that their conduct was illegal.  Id.  By contrast, in *Thomas v. Cassia Cty.*, the Ninth Circuit ruled that the following evidence was not sufficient for the *Nieves* exception to apply: (1) records showing that 35% of all suspects were arrested for the crime plaintiff allegedly committed, and (2) records showing that the police arrested every individual (two total) who was similarly situated to plaintiff.  Thomas v. Cassia Cty., 2022 U.S. App. LEXIS 11267, *5 (9th Cir. Apr. 26,

1    2022).

2         Here, the amount of evidence submitted by Plaintiff falls well short of that presented in

3    *Ballentine*.  Plaintiff asserts that "videos produced during discovery show that other deputies do

4    not treat individuals filming the outside of the courthouse(s) the same way."  Doc. No. 29 at 27.

5    Additionally, Plaintiff states "[t]his court can readily see public videos from news channels in

6    which film and photograph [sic] the exact same areas of the criminal courthouse without

7    problem."  Id.  This conclusory reference to news channels is not "objective evidence," and the

8    Court cannot detect in any of the referenced videos any individual other than Plaintiff filming the

9    courthouse.  See Doc. No. 10 (referencing media Exhibits C through H).  Furthermore, unlike the

10   evidence in *Ballentine*, Plaintiff's evidence does not show that engaging in the type of speech that

11   Plaintiff engaged in "rarely result[ed] in arrest," or that Plaintiff previously filmed the inside of the

12   courthouse on several prior occasions without getting arrested, cited, or told that her conduct was

13   illegal.  See Ballentine, 28 F.4th at 62.  Plaintiff's evidence does not even rise to the level of

14   evidence presented in *Thomas*, given that there are no records or allegations before the Court

15   showing how many or what percent of individuals were suspected of, warned, or arrested for

16   obstruction in connection with filming the inside of the courthouse.  See Thomas, 2022 U.S. App.

17   LEXIS 11267, at *5.  Accordingly, the Court finds that Plaintiff failed to provide sufficient

18   "objective evidence" of differential treatment for the *Nieves* exception to apply.  Because the

19   Court previously found that Defendants had probable cause to investigate and arrest Plaintiff for

20   filming the inside of the courthouse, Plaintiff's First Amendment retaliatory arrest claim fails.[3]

21   See Nieves, 139 S. Ct. at 1728 ("Because there was probable cause to arrest Bartlett, his retaliatory

22   arrest claim fails as a matter of law.").

23   //

24   

---

[3] Furthermore, Plaintiff does not oppose Defendants' contention that the Fresno County Superior Courthouse is a
25   nonpublic forum where speech can be regulated and restricted as long as the regulations (1) are reasonable in light of
the purpose served by the forum and (2) are viewpoint neutral.  Cornelius v. NAACP Legal Defense & Educ. Fund,
26   473 U.S. 788, 806 (1985); Sammartano v. First Judicial Dist. Ct., 303 F.3d 959, 966 (9th Cir. 2002).  In light of
Plaintiff's non-opposition and the body of Ninth Circuit caselaw indicating that county courthouses and their
27   surrounding curtilage are nonpublic forums, the Court finds that Defendants' regulation and restriction of Plaintiff's
video recording was reasonable and viewpoint neutral.  See Sammartano, 303 F.3d at 966; Mante v. Slough, 2015 U.S.
28   Dist. LEXIS 200775, *33 (C.D. Cal. Mar. 27, 2015); see also Rouzan v. Dorta, 2014 U.S. Dist. LEXIS 61012, *35-36
(C.D. Cal. Mar. 12, 2014).

1    **2.   <u>Malicious and Retaliatory Prosecution</u>**

2        *Defendants' Arguments*

3        Defendants argue that Plaintiff's section 1983 claim for malicious prosecution fails

4   because Defendants had probable cause to arrest her. Defendants further argue that they did not

5   apply pressure on the prosecutor to prosecute the case nor conceal exculpatory facts from the

6   prosecutor. Moreover, Defendants contend that they are entitled to qualified immunity for the

7   same reasons they are entitled to qualified immunity for Plaintiff's retaliatory arrest and excessive

8   force claims.

9        *Plaintiff's Arguments*

10       Plaintiff argues that even if there is a finding of probable cause, it will not defeat Plaintiff's

11  malicious and retaliatory prosecution claim because Defendants arrested Plaintiff merely as

12  retaliation for speaking back to them.  Additionally, Plaintiff contends that Defendants treated

13  Plaintiff differently than they treated similarly situated individuals.  Furthermore, Plaintiff asserts

14  that Defendants' argument for qualified immunity fails for the same reasons it fails for Plaintiff's

15  retaliatory arrest and excessive force claims.

16       *Legal Standard*

17       Malicious prosecution actions are not limited to suits against prosecutors but may be

18  brought against other persons who have wrongfully caused the charges to be filed.  <u>Awabdy v.</u>

19  <u>City of Adelanto</u>, 368 F.3d 1062, 1066 (9th Cir. 2004).  To maintain a § 1983 action for malicious

20  prosecution, a plaintiff must show that "the defendants prosecuted her with malice and without

21  probable cause, and that they did so for the purpose of denying her [a] specific constitutional

22  right." <u>Smith v. Almada</u>, 640 F.3d 931, 938 (9th Cir. 2011) (citing <u>Freeman v. City of Santa Ana</u>,

23  68 F.3d 1180, 1189 (9th Cir. 1995)).  A finding of probable cause is an absolute defense to

24  malicious prosecution.  <u>Lassiter v. City of Bremerton</u>, 556 F.3d 1049, 1054 (9th Cir. 2009).

25  However, a plaintiff can rebut a prima facie finding of probable cause by showing that "the

26  criminal prosecution was induced by fraud, corruption, perjury, fabricated evidence, or other

27  wrongful conduct undertaken in bad faith." <u>Awabdy</u>, 368 F.3d at 1067.  While the decision to file

28  a criminal complaint is ordinarily presumed to result from an independent determination by the

prosecutor, the presumption of prosecutorial independence does not bar a subsequent § 1983 claim against a state or local official who "improperly exerted pressure on the prosecutor, knowingly provided misinformation to him, concealed exculpatory evidence, or otherwise engaged in wrongful or bad faith conduct that was actively instrumental in causing the initiation of legal proceedings." Id. Such evidence must be substantial. Harper v. City of L.A., 533 F.3d 1010, 1027 (9th Cir. 2008). "In the absence of evidence to rebut the presumption [of prosecutorial independence], the presumption [is] sufficient to require summary judgment for the defendants." Galbraith v. Cty. of Santa Clara, 307 F.3d 1119, 1126 (9th Cir. 2002) (citing Smiddy v. Varney, 803 F.2d 1469, 1471 (9th Cir. 1986)).

### *Discussion*

Because the Court previously found that Defendants had probable cause to arrest Plaintiff, Defendants have an absolute defense to Plaintiff's malicious prosecution claim. Lassiter, 556 F.3d at 1054. To defeat this defense and the presumption of prosecutorial independence, Plaintiff alleges in her Complaint that Defendant Bare's incident report "did not include exculpatory facts" including that Plaintiff was "filming in a permitted area," "not provided any warning prior to being grabbed," and "never given notice or provided copies of the Local Rules or General Orders." Doc. No. 1 at 5, ¶ 17. The Court is not persuaded that this rebuts the presumption of prosecutorial independence and defeats Defendant's defense. Awabdy, 368 F.3d at 1067.

Plaintiff does not cite any cases indicating that the omission of these facts rises to the level of "improperly exerting pressure on the prosecutor." Additionally, there is no evidence in the record demonstrating that Defendants "knowingly withheld relevant information with the intent to harm [Plaintiff]" or that Defendants "knowingly supplied false information." Collins v. City of Sacramento, 2007 U.S. Dist. LEXIS 75231, *32 (E.D. Cal. Oct. 9, 2007). Defendant Bare noted in the incident report that the surveillance video of the incident would be preserved and that a DVD copy of the CCTV footage would be booked once released by the courts. Plaintiff does not present any evidence that Defendants impeded the prosecutors from viewing this video in which the prosecutors could see for themselves whether Plaintiff was actually "filming in a permitted area," "provided any warning prior to being grabbed," or "provided copies of the Local Rules or

General Orders." Cf. Colbert v. Fontana Police Dep't, 300 F. App'x 490, 492 (9th Cir. 2008). Defendants were "not required to provide a play-by-play of the short video" for the prosecutors. Id.

Furthermore, the incident report itself does not fully support Plaintiff's assertion that Defendant Bare omitted facts regarding Plaintiff's location or that she was "never given notice" of the General Order and Local Rule.  The prosecutors could see in the incident report that Defendants approached Plaintiff in the breezeway of the courthouse and that Defendant Bare attempted to "inform her of the Fresno County Superior Court rule 1.1.17 and Fresno County Superior Court General rule regarding use of cameras that prohibits her from recording the inside of the courthouse." Doc. No. 23-4 at 8.  Thus, Plaintiff's allegations cannot be considered sufficiently "substantial" to rebut the presumption of prosecutorial independence and defeat Defendant's defense.

Plaintiff also has failed to satisfy her burden to prove that Defendants are not entitled to qualified immunity.  Plaintiff's briefing does not cite any case (or evidence) clearly establishing that the prosecution of Plaintiff was "induced by fraud, corruption, perjury, fabricated evidence, or other wrongful conduct undertaken in bad faith," or that an incident report similar to that of Defendants "improperly exerted pressure on the prosecutor." Awabdy, 368 F.3d at 1067. Therefore, Defendants are entitled to qualified immunity.  Wesby, 138 S. Ct. at 589.

### 3.  Excessive and Retaliatory Force[4]

*Defendants' Arguments*

Defendants argue that Plaintiff's excessive force claim fails because Defendants used objectively reasonable force in arresting Plaintiff under the totality of the circumstances. Specifically, Defendants contend the following factors demonstrate that their use of force was

---

[4] While Plaintiff alleges excessive and retaliatory force claims under both the First and Fourth Amendments, all claims that law-enforcement officers used excessive force to effect a seizure are governed by the Fourth Amendment's "reasonableness" standard. Plumhoff v. Rickard, 572 U.S. 765, 774 (2014).  Therefore, the Court will address Plaintiff's First and Fourth Amendment excessive and retaliatory force claims under the Fourth Amendment standard. To the extent Plaintiff's First Amendment retaliatory force claim is referring to the arrest itself, "claims for false arrest and excessive force are analytically distinct," Sharp v. Cty. of Orange, 871 F.3d 901, 916 (9th Cir. 2017), and, in any event, the Court addressed Plaintiff's First Amendment retaliatory detention and arrest claim in an earlier section of this Order.

objectively reasonable.  First, their acts of grabbing Plaintiff's arm, pushing her against the wall, and handcuffing her were a relatively low-level use of force.  Second, Plaintiff's video recording posed a threat to those witnesses, victims, and jury members who were entering the courthouse through the security screening area.  Third, Plaintiff verbally resisted Defendants' investigative efforts, and physically pulled away as Defendant Bare took her arm to arrest her.  Finally, it was not feasible to give Plaintiff a warning because Defendants did not know whether she was live broadcasting and they wished to avoid forewarning potential associates of Plaintiff of Defendants' intended actions.

Defendants also argue they are entitled to qualified immunity because it was not clearly established that every reasonable officer would have understood Defendant's conduct to be a violation of Plaintiff's Fourth Amendment rights.  According to Defendants, they reasonably believed they acted lawfully when they grabbed Plaintiff's arms, overcame her resistance by pushing her against the wall, and detained her to complete their investigation.

*Plaintiff's Arguments*

Plaintiff argues that there is a genuine dispute of material fact as to whether Defendants' use of force was objectively reasonable.  According to Plaintiff, she posed no threat to Defendants or to the orderly operations of the courthouse.  By contrast, Defendants were hostile from the start and unduly violent to the finish.  Additionally, Plaintiff asserts that she did not flee the scene, strike the Defendants, or verbally threaten them.  Furthermore, Plaintiff argues that the severity of the crime at issue—i.e., interrupting Defendants and not providing her identification—is low.

Plaintiff further argues that Defendants are not entitled to qualified immunity because they violated clearly established Fourth Amendment law when they grabbed Plaintiff's arm, pushed her against the wall, and placed her in handcuffs.  According to Plaintiff, Ninth Circuit caselaw clearly established "the right to be free from the application of non-trivial force for engaging in mere passive resistance" and that the "uses of force similar to those Borden asserts are excessive when the person only passively resists, has committed or is suspected of committing a misdemeanor crime, and poses no immediate threat."  Doc. No. 29 at 22-23.

//

1        *Legal Standard*

2        In evaluating a Fourth Amendment claim of excessive force, courts ask whether the

3 officers' actions were "objectively reasonable" in light of the facts and circumstances confronting

4 them.  Graham v. Connor, 490 U.S. 386, 397 (1989); Williamson v. City of Nat'l City, 23 F.4th

5 1146, 1151 (9th Cir. 2022).  To evaluate the reasonableness of the force used, courts "balance the

6 nature and quality of the intrusion on the individual's Fourth Amendment interests against the

7 countervailing government interests at stake."  O'Doan, 991 F.3d at 1037 (citing Graham, 490

8 U.S. at 396).  The right to make an arrest or investigatory stop necessarily carries with it the right

9 to use some degree of physical coercion or threat thereof to effect it.  Graham, 490 U.S. at 396.

10 Proper application of the test of reasonableness under the Fourth Amendment "requires careful

11 attention to the facts and circumstances of each particular case."  Id.  Courts consider "the type

12 and amount of force inflicted" as well as "(1) the severity of the crime at issue, (2) whether the

13 suspect posed an immediate threat to the safety of the officers or others, and (3) whether the

14 suspect was actively resisting arrest or attempting to evade arrest by flight."  O'Doan, 991 F.3d at

15 1037.  "The calculus of reasonableness must embody allowance for the fact that police officers are

16 often forced to make split-second judgments—in circumstances that are tense, uncertain, and

17 rapidly resolving—about the amount of force that is necessary in a particular situation."  Graham,

18 490 U.S. 396-97 (1989).  Courts must judge the reasonableness of a particular use of force "from

19 the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of

20 hindsight."  Williamson, 23 F.4th at 1151 (quoting Graham, 490 U.S. at 396).

21        In evaluating qualified immunity in the excessive force context, the Supreme Court has

22 reminded lower courts that "[u]se of excessive force is an area of the law 'in which the result

23 depends very much on the facts of each case,' and thus police officers are entitled to qualified

24 immunity unless existing precedent 'squarely governs' the specific facts at issue."  O'Doan, 991

25 F.3d at 1036-37 (citing Kisela v. Hughes, 138 S. Ct. 1148, 1153 (2018)).  Although it is not

26 necessary to identify a case that it is "directly on point," generally the plaintiff needs to identify a

27 case where an officer acting under similar circumstances was held to have violated a federal right.

28 Rivas-Villegas v. Cortesluna, 142 S. Ct. 4, 8 (2021); Wesby, 138 U.S. at 577; Vos, 892 F.3d at

1035.  Whether a constitutional right was violated is generally a question of fact for the jury, while

whether a right was clearly established is a question of law for the judge.  Morales, 873 F.3d at

823.  The plaintiff bears the burden to prove that the law was "clearly established." Felarca, 891

F.3d at 815.

> *Discussion*

On one hand, the type and amount of force used by Defendants were relatively low level

and nonviolent.[5]  See Brooks v. Clark Cty., 828 F.3d 910, 921 (9th Cir. 2016) ("Not every push or

shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the

Fourth Amendment."); Bennett v. Gow, 345 F. App'x 286, 287 (9th Cir. 2009) (finding use of

force reasonable where officer pushed the plaintiff to the ground and handcuffed him).

Additionally, Plaintiff's act of video recording the courthouse's entrance and security screening

area undermined the written security objectives of the General Order and Local Rule 1.1.17; that

is, Plaintiff's actions jeopardized "the protection of the public, all parties, and court personnel, and

. . . the fair and orderly resolution of cases."  Furthermore, Plaintiff was uncooperative and

obstructing the Defendants' investigation into Plaintiff's conduct of possibly video recording the

interior of the courthouse.

On the other hand, Plaintiff did not appear to pose an immediate threat to Defendants'

physical safety, Plaintiff did not attempt to run or violently resist arrest, Plaintiff appeared to be

standing in a designated media area, and Defendants provided no warning before attempting to

grab Plaintiff's arm to arrest her.  Additionally, the severity of the crime at issue was relatively

minor.  See Young v. Cty. of L.A., 655 F.3d 1156, 1164-65 (9th Cir. 2011) (referring to a

violation of California Penal Code section 148(a)(1) as a "non-violent misdemeanor offense that

will tend to justify force in far fewer circumstances than more serious offenses, such as violent

felonies").  For purposes of this motion only, the Court will assume without deciding that the

Defendants engaged in excessive force.

So assuming, the Court finds that Defendants are entitled to qualified immunity.  It is

---

[5] Plaintiff admits in her Complaint that the force used on her was a "lower level of force."  See Doc. No. 1 at 7, ¶ 23. Furthermore, aside from an alleged "bruise on the right forearm that lasted for several days," Plaintiff does not describe any other physical injury resulting from her arrest.  Id. at 4, ¶ 13.

1   Plaintiff's burden to prove that clearly established law placed Defendants on notice that their use
2   of force was unconstitutional.  Felarca, 891 F.3d at 815.  That is, Plaintiff must show that the right
3   to be free of an officer's use of physical force to effectuate handcuffing and an arrest while a
4   citizen engages in obstructive conduct during the officer's investigation into potential courthouse
5   rule violations was so clear that every reasonable officer would know that Defendants' conduct
6   was unconstitutional.  See Wesby, 138 S. Ct. at 589; Vos, 892 F.3d at 1035.  However, Plaintiff
7   did not satisfy this burden.  Plaintiff relies on *Gravelet-Blondin v. Shelton* for the proposition that
8   "[t]he right to be free from the application of non-trivial force for engaging in mere passive
9   resistance was clearly established prior to 2008."  Gravelet-Blondin v. Shelton, 728 F.3d 1086,
10  1093 (9th Cir. 2013).  In *Gravelet-Blondin*, a police officer used a taser to subdue a passively
11  resistant plaintiff, even though the alleged crime was minor and there was no reason to believe that
12  the plaintiff posed an immediate threat to anyone's safety.  Id. at 1089.  The Ninth Circuit held
13  that the use of the taser constituted excessive force after considering several precedent cases in
14  which the use of pepper spray or bean bag projectiles against passive resistors was found to be
15  unconstitutional.  Id. at 1093 (citing Nelson v. City of Davis, 685 F.3d 867, 881 (9th Cir. 2012),
16  Headwaters Forest Def. v. Cnty. of Humboldt, 276 F.3d 1125, 1131 (9th Cir. 2002), and Deorle v.
17  Rutherford, 272 F.3d 1272, 1282 (9th Cir. 2001)).  While *Gravelet-Blondin* remains good law, it is
18  distinguishable here because the type and degree of force used in those cases are significantly
19  more severe than those used here.  See Emmons v. City of Escondido, 921 F.3d 1172, 1174 (9th
20  Cir. 2019) (distinguishing *Gravelet-Blondin* because "the force used [there] was significantly
21  greater than the force used in this case").  As noted above and acknowledged by Plaintiff,
22  Defendants' use of force was "low level" and did not rise to the same level as tasers, bean bag
23  projectiles, or pepper spray.  See Bryan v. MacPherson, 630 F.3d 805, 826 (9th Cir. 2010)
24  ("[T]asers like the X26 constitute an 'intermediate or medium, though not insignificant, quantum
25  of force.'").
26        The other published Ninth Circuit cases Plaintiff cites are similarly distinguishable.  For
27  example, *Young v. Cty. of L.A.* involved the use of pepper spray and strikes with a baton during a
28  traffic stop.  See Young, 655 F.3d at 1168.  *Winterrowd v. Nelson* similarly involved officers

during a traffic stop who forced the plaintiff onto the hood of a car, cranked up his injured right arm causing him to scream, applied even more force to his arm despite his screams in pain, and caused him to fall down.  See Winterrowd v. Nelson, 480 F.3d 1181, 1184- 85 (9th Cir. 2007). Furthermore, *Meredith v. Erath* is distinguishable because unlike Defendants here, the defendants there grabbed the plaintiff in her home even though she was not the target of the investigation, threw her to the ground, twisted her arms, and handcuffed her so tightly that she suffered pain and extensive bruising and repeatedly complained that the handcuffs were too tight.  Meredith v. Erath, 342 F.3d 1057, 1061 (9th Cir. 2003).

Plaintiff's cited cases do not "squarely govern" the specific facts at issue in this case. O'Doan, 991 F.3d at 1036-37.  Plaintiff has not submitted, and the Court is unaware of, controlling authority in the Ninth Circuit or a robust consensus of persuasive authority outside this circuit indicating that Defendants' conduct was unreasonable under the circumstances.  Because Plaintiff has not met her burden to prove that the law clearly established that Defendants' conduct was unconstitutional, Defendants are entitled to qualified immunity.

## **ORDER**

Accordingly, IT IS HEREBY ORDERED that:

1.  Defendant's motion for summary judgment (Doc. No. 23) is GRANTED;

2.  All pending court dates and orders are vacated; and

3.   The Clerk of Court is directed to CLOSE this case.

IT IS SO ORDERED.

Dated:   September 28, 2022         _____

                              SENIOR  DISTRICT  JUDGE